# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVE ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-03722-TWP-MPB |
| | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| PAUL A. TALBOT, MD, and LAURA BODKIN | ) |
| | ) |
| Defendants. | ) |

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DIRECTING PLAINTIFF TO SHOW CAUSE WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED ON DIFFERENT GROUNDS

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Laura Bodkin ("Bodkin") (Dkt. 102). While a prisoner in the Indiana Department of Correction, Plaintiff Steve Rogers ("Rogers"), endured two bouts with painful, immobilizing hernias between 2018 and 2020, which both ultimately ended in surgery. Rogers initiated this action alleging that Bodkin, who worked for the Indiana Department of Correction as a grievance specialist at Pendleton Correctional Facility ("Pendleton"), acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Although Bodkin failed to address the merits of the claim against her, the record nevertheless shows that no reasonable jury could find her responsible for violating Rogers' Eighth Amendment rights. Accordingly, the Court **denies** Bodkin's Motion, but orders Rogers to **show cause** why summary judgment should not be granted on other grounds.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. Federal

Rule of Civil Procedure 56(a).  A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.  FACTUAL BACKGROUND

The Court detailed Rogers' relevant medical history in its ruling on the Motion for Summary Judge filed by Wexford of Indiana, LLC and Paul A. Talbot, MD (the "Medical Defendants). (*See* Dkt. 121.)  To summarize, by April 2018, Rogers had developed an inguinal hernia near his right groin.  In early 2019, Rogers was moved to Pendleton from another prison.  At that point, his *inguinal* hernia extended into his scrotum, and he also developed an *umbilical* hernia protruding from his abdomen.  Despite numerous requests for treatment, the Pendleton medical staff did not address Rogers' hernias until February 20, 2019.  By April 2019, Dr. Talbot agreed that Rogers should be considered for surgery.  By the time Rogers received surgery in July 2019, his inguinal hernia was the size of a baseball; his umbilical hernia was the size of a grapefruit; and they caused him constant, severe pain and affected his ability to walk.  Rogers recovered from his surgery well, but the repair mesh ruptured in February 2020, and he underwent a second surgery in July 2020.

During this time, Rogers submitted only one grievance.  (Dkt. 41-2 at 8.)  On June 17, 2019, he wrote: "I filed an informal [grievance] on 6-10-19 from which I have not received a response. Therefore, I am now filing my formal [grievance] on the denial of proper medical care for not getting me to surgery for my hernia." *Id.*  At that point, a surgeon had examined Rogers and recommended that he have surgery to repair his hernias, but no one told him when his surgery would take place.  (Dkt. 100-2 at 40–45.)

A week after Rogers submitted his grievance, he was taken to the hospital for surgery. (Dkt. 100-2 at 46.)  Unfortunately, because no one had informed him ahead of time, Rogers did not fast prior to surgery and his surgery had to be postponed.  *Id.*; Dkt. 100-3 at 11 (Rogers Dep.

39:9–23). Medical records from that day stated that Rogers' surgery would be rescheduled. (Dkt. 100-2 at 46.)

Bodkin returned Rogers' grievance on July 1, 2019, a week after his originally-scheduled operation. (Dkt. 41-2 at 7.) Rogers stated in his grievance that his hernias had been "ongoing since Jan[uary] 2018." *Id.* at 8. Bodkin ruled that a grievance may "only have one incident date per grievance" and told Rogers he could correct and resubmit the form within five business days. *Id.* at 7. This marked Bodkin's final involvement with Rogers' hernia. He underwent successful surgery on July 8, 2019. (Dkt. 100-2 at 48–52.)

### III. BODKIN'S MOTION FOR SUMMARY JUDGMENT

Bodkin seeks judgment as a matter of law arguing that she was not involved in or responsible for treating Rogers' hernias; she simply received, reviewed, and processed a grievance Rogers submitted seeking treatment for his hernias.

Rogers' claim against Bodkin is based on the Eighth Amendment. But Rogers cannot establish a constitutional violation simply by showing that Bodkin rejected his grievance. "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). *See also e.g.*, *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) ("McGee's claims against . . . the individuals who ruled against McGee on the institutional grievances he filed . . . fail as a matter of law."); *George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

4

Instead, "[p]rison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court has already determined that a reasonable jury could find that the medical defendants were deliberately indifferent to Rogers' need for hernia treatment. However, the fact that Rogers reported the medical defendants' inaction in his grievance does not automatically extend Eighth Amendment liability to Bodkin.

"[N]o prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). A prison official presented with a grievance typically satisfies the Constitution by investigating the grievance and responding to it. *Hill v. Nicholson*, 829 F. App'x 141, 143 (7th Cir. 2020) (citing *Burks*, 555 F.3d at 595). An officer reviewing a grievance "can rely on the expertise of medical personnel." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). If the officer learns that the prisoner "is under the care of medical experts," she "will generally be justified in believing that the prisoner is in capable hands." *Id.* In this situation, the grievance officer is deliberately indifferent only if she disregards evidence that the medical staff is mistreating the prisoner or not treating the prisoner at all. *Id.*

Bodkin chose not to confront the merits of Rogers' Eighth Amendment claim in her summary judgment motion. Instead of citing evidence to show that her handling of Rogers' grievance satisfied the Eighth Amendment, she argues that Rogers "recanted on all of his claims against [] Bodkin during his deposition." (Dkt. 103 at 1.)

Read in isolation, Rogers' deposition responses suggest that he does not understand the basis for his Eighth Amendment claim against Bodkin. Rogers testified at his deposition that he did not remember Bodkin by name and that he did not know why he named her as a defendant.

5

(Dkt. 104-1 at 55:24–56:4, 56:14–18.) He remembered filing a grievance, but he could not answer whether or why he thought Bodkin was deliberately indifferent to his medical needs. *Id.* at 57:2–10. When defense counsel asked whether he had "any issue with Bodkin in this lawsuit," he answered, "No, I do not." *Id.* at 57:19–22.

Of course, Rogers is not an attorney. He sat for his deposition without an attorney. He was not equipped to object to the leading questions that produced those responses, much less clarify his responses on cross examination.

Rogers did, however, clarify his statements in his summary judgment response. He contends that, as a grievance specialist, Bodkin had authority to investigate grievances and "order the medical department to take certain actions." (Dkt. 114 at 5.) He asserts that Bodkin denied "official review of his grievance filings." *See id.* Indeed, Bodkin returned the grievance after a cursory screening. (Dkt. 41-2 at 7.) The record indicates that no member of the Pendleton staff ever reviewed its substance or considered Rogers' complaints regarding his need for hernia surgery. Rogers suggests that, by rejecting his grievance in this manner, Bodkin "caused a permanent delay in review of [his] medical condition" and "delayed medical treatment." (Dkt. 114 at 5.)

Bodkin did not file a reply.

Bodkin's summary judgment filings—or perhaps the materials she chose not to file—prevent the Court from granting her Motion for Summary Judgment. She sought judgment as a matter of law on one ground: that Rogers no longer wished to press an Eighth Amendment claim against her. Rogers' summary judgment response not only rebuts that contention; it explicitly lays out the basis for his Eighth Amendment claim and cites evidence to support it. When a plaintiff

cites competent evidence to support his claims in response to a summary judgment motion, the court treats his assertions as true. *See* Fed. R. Civ. P. 56(e)(2); S.D. Ind. L.R. 56(f)(2).

Rogers rebutted Bodkin's only stated basis for summary judgment. By failing to reply to his arguments or raise alternative bases for summary judgment, Bodkin left the Court no choice but to deny her motion. Bodkin's Motion for Summary Judgment is **denied**.

## IV. ALTERNATIVE GROUNDS FOR SUMMARY JUDGMENT

Bodkin's failure to properly support her summary judgment motion does not, however, mean that the claims against her will proceed to trial. Under Federal Rule of Civil Procedure 56(f), a district court may grant summary judgment on a ground not raised by the moving party after giving notice and a reasonable time to respond. See *Lynch v. Northeast Regional Commuter Railroad Corp*. 700 F.3d 906, 910-911(7th Cir. 2012). The record shows that Bodkin did not violate Rogers' Eighth Amendment rights, so that course is appropriate here.

Rogers' claim against Bodkin comes down to only a few facts, none of which are disputed:

1) As of June 6, 2019, Rogers' medical records reflected that a surgeon examined him and recommended surgery. (Dkt. 100-2 at 40–45.)

2) Rogers filed only one grievance about his hernias. (Dkt. 41-2 at 8.)

3) He wrote that grievance on June 17, 2019. *Id.*

4) Bodkin's involvement in this case is limited to her review of and response to that formal grievance.

5) Rogers was taken to the hospital for surgery a week after he submitted his grievance but did not have surgery that day. (Dkt. 100-2 at 46.)

6) Bodkin returned Rogers' grievance on July 1, 2019. (Dkt. 41-2 at 8.)

7) Rogers underwent successful surgery on July 8, 2019. (Dkt. 100-2 at 48–52.)

Bodkin's duty under the Eighth Amendment was to investigate Rogers' grievance and respond to it. *Hill*, 829 F. App'x at 143. A jury could find that Bodkin violated Rogers' Eighth

7

Amendment rights only if she disregarded evidence that the medical staff was mistreating him or not treating him at all. *Arnett*, 658 F.3d at 755.

It is not clear when Bodkin received Rogers' grievance. If she received it immediately after Rogers wrote the grievance on June 17, 2019, any review of his medical records would have revealed that a physician met with him less than two weeks earlier and that a surgeon had recommended hernia repair surgery. (*See* Dkt. 100-2 at 40–45.) Moreover, he was taken to the hospital for surgery a week later. *Id.* at 46. No evidence suggests that Bodkin was responsible for telling Rogers to fast before surgery; it was not her fault he did not have surgery that day.

If, on the other hand, Bodkin did not receive Rogers' grievance until she returned it on July 1, 2019, any review of his medical records would have revealed that he was taken for surgery a week earlier and that surgery was being rescheduled. *See id.* In any event, Rogers actually received the surgery a week later. *Id.* at 48.

It is not likely that a reasonable jury could not find, in either case, that Bodkin had reason to believe that Rogers was being mistreated or ignored. Roger's medical records show that the medical staff was attentive to his condition and attempting to arrange surgery. More important, he underwent the surgery he requested a week after she returned his grievance. Given the complexities involved in scheduling a non-emergency surgery—particularly for an incarcerated person—there is no basis to conclude that Bodkin delayed Rogers' treatment. "[T]here is no tort without an actionable injury caused by the defendant's wrongful act," *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014), and no evidence suggests that Bodkin caused an actionable injury in this case. Accordingly, Rogers is given an opportunity to respond, thereafter the Court can determine whether summary judgment should be granted pursuant to Rule 56(f)

Before concluding, the Court cautions litigants against modeling the summary judgment practice displayed in this case—or expecting that comparable briefing will produce similarly favorable outcomes. When an attorney files a summary judgment motion, the Court expects the briefing to address the merits of the claims. When the nonmovant rebuts the movant's assertions, the Court expects counsel to respond in good faith—either by meaningfully challenging the nonmovant's contentions or by conceding that summary judgment is not warranted and withdrawing the motion.

In this case, defense counsel opted not to brief the merits at the outset. And when Rogers responded, defense counsel neither challenged his contentions through a reply nor withdrew the motion. Instead, defense counsel appears to have relied on "'the hope' that this Court would commit error." *Littler v. Martinez*, No. 2:16-cv-00472-JMS-DLP, 2020 WL 42776, at *61 (S.D. Ind. Jan. 3, 2020) (quoting *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014)). "This approach to summary judgment is . . . both costly and wasteful." *Malin*, 762 F.3d at 564. Here, the consequence is that Bodkin's participation--and therefore the Court's participation--in the case extends through at least one more round of briefing and ruling.

## V. CONCLUSION

Bodkin's Motion for Summary Judgment, Dkt. [102], is **DENIED** for the reasons discussed in Part III above.  Nevertheless, Rogers must **show cause no later than August 30, 2021**, why the Court should not grant Bodkin summary judgment on the alternative grounds discussed in Part IV. If he fails to respond in the time provided, the Court will grant Bodkin summary judgment pursuant to Rule 56(f) without further warning or opportunity to show cause.  If a response is filed, Bodkin may have **seven (7) days** to reply.

**SO ORDERED.**

Date: 8/24/2021

DISTRIBUTION:

Steve Rogers, #875983
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

David C. Dickmeyer
INDIANA ATTORNEY GENERAL'S OFFICE
david.dickmeyer@atg.in.gov

Margo Tucker
INDIANA ATTORNEY GENERAL'S OFFICE
margo.tucker@atg.in.gov

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana